# EXHIBIT "I"

CIVIL ACTION NO. V-10-64
UNITED STATES OF AMERICA V. CITIZENS MEDICAL CENTER, ET AL.

# RELATORS' THIRD AMENDED QUI TAM COMPLAINT

## PHYSICIAN EMPLOYMENT AGREEMENT

PHYSICIANS EMPLOYMENT AGREEMENT dated as of June 1a 2007, between Will Campbell ("Employee") and CITIZENS MEDICAL CENTER (the "Hospital").

WHEREAS, Citizens Medical Center, a county-owned hospital established under Chapter 263 Texas Health & Safety Code, is licensed by the State of Texas and accredited by the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO"); and

WHEREAS, in furtherance of its charitable, scientific and educational purposes, the Hospital provides various health care and medical services to the residents of Victoria County, Texas, and surrounding communities (the "Community"); and

WHEREAS, the Hospital has determined that the employment of a physician specializing in Cardiology is (a) in the best interests of the Hospital, its patients and the community and will enable it to better serve the residents of the community, and (b) is consistent with the Hospital's long-range goals expressed in its recently adopted strategic plan; and

WHEREAS, Employee is a physician specializing in Cardiology and is licensed to actively practice medicine in Texas; and

WHEREAS, Hospital and Employee, as parties to this Agreement, wish to establish a relationship of employer/employee as hereinafter described:

NOW, THEREFORE, in consideration of the premises set forth above and the mutual benefits, covenants, and agreements set forth below, the parties agree as follows:

1. The Hospital hereby employs Employee and Employee accepts employment from the Hospital, upon the terms and conditions herein specified. During the term of employment, Employee shall provide the full-time services and skill of physician for the performance of duties on behalf of the Hospital, which shall meet or exceed the physician-worked component of Relative Value Units ("RVUs") established by the 50th percentile of MGMA standard for similar practices, and in general, maintain and promote the Hospital's business. In addition, Employee shall provide seven (7) days of emergency room call each month to include at least one (1) weekend. It is anticipated that the RVU methodology described above will result in annual compensation of $500,000 for invasive cardiology and $400,000 for non-invasive cardiology, amounts which are above the 50th percentile for MGMA salary surveys but reflect the workload that may previously not be completely documented. For the first six (6) months of this agreement, Employee will be paid a monthly salary based upon anticipated annual earnings as above. After the first six (6) months, the compensation methodology will revert entirely to Relative Value Units (RVUs). Employee shall not engage in the

practice of medicine except as an employee of the Hospital, unless otherwise authorized by the Hospital. All medical practice activities performed hereunder shall comply with all policies, standards and regulations of the Hospital now or hereafter promulgated and be subject to review by the Hospital to include the Employee's productivity.

Notwithstanding the foregoing, Employee shall not be precluded from maintaining privileges in any Victoria area hospital so long as Employee does not have an ownership interest in any such Hospital or competing entity, and all revenue derived therefrom is assigned to the Hospital.

2. Term. Unless earlier terminated as provided herein, this Agreement shall commence on the date hereof and continue for one (1) year and if Employee's employment has not been terminated pursuant to this Agreement, Employee's employment shall thereafter be renewed automatically for subsequent one-year terms unless terminated by Employee or the Hospital in accordance with Paragraph 11, or unless either party is unable to satisfy themselves as to the acceptability of the Agreement as described in paragraph 17.

3. Compensation.

   a. Salary. During the period of active employment as defined above, the Hospital agrees to pay Employee as compensation for the services hereunder an RVU-based salary equal to $65 (the "Multiplier") times the total number of billable and coded RVUs allocable to the Employee's personal services. The minimum salary, however, is $500,000.00 for invasive and $400,000.00 for non-invasive cardiology. Each year, on the anniversary date of this Agreement, the Multiplier may be changed to reflect changes in RVUs assigned by Medicare. Employee's salary shall be paid on or before the 28th day of the following month based on the number of RVUs billed for the preceding month. Social Security and FICA shall be deducted.

   b. Vacation. After the first six (6) months of employment, Employee shall be entitled to two (2) weeks of vacation per year and another two (2) weeks after the first year of employment. Thereafter, the annual vacation will be four (4) weeks per year. During vacation, the employee will be paid at the rate of $1,000 per day. At no time will the employee be eligible to take more than two (2) weeks at a time separated by thirty (30) days. Unused vacation at the end of the calendar year will, likewise, be compensated at $1,000 per day. Vacation does not accrue beyond each anniversary date.

   c. CME. After the first six (6) months of employment, Employee shall be entitled to up to one (1) week of continuing medical education ("CME") time off with an additional one (1) week of continuing medical education

2

CMC00000333

("CME") after the six (6) month anniversary of this agreement. Continuing accrual will be based upon two (2) weeks per year, paid at the rate of $1,000 per day and up to $3,200 in CME Allowance per calendar year, subject to the Hospital's policy for employee travel. Any unused continuing medical education ("CME") will be paid to Employee at $1,000 per day. CME does not accrue beyond each anniversary date.

d. Health and Dental Insurance. Employee shall be entitled to participate in the Hospital's health and dental insurance program. The employee portion is currently approximately $60 per month. Dependents will be eligible to participate in the Hospitals' health and insurance program at the prevailing ~~COBRA~~ rates when eligible.

e. Deferred Compensation Program. Employee shall be entitled to participate in the Hospital's 457 Deferred Compensation Program. Currently, participation is limited by IRS regulations at $15,500 per year which amount will be funded by the hospital. The hospital retirement plan is designed for hourly and salaried employees and is not available for employed physicians.

f. Disability Insurance. The Hospital shall not provide Disability Coverage for Employee. Employee is encouraged to purchase his own disability policy.

4. Working Facilities. Employee shall lease and occupy personal office space in a medical office facility owned by the Hospital, at the prevailing rate. The expenses associated with operating the clinic will be borne by the Hospital.

5. Fees and Patients. All fees, compensation, monies and other things of value received or realized as a result of the rendition of professional medical services by Employee shall belong to or be paid and delivered to the Hospital. Employee hereby assigns to the Hospital Employee's rights to payment for services performed by Employee during the term of this Agreement, and agrees to cooperating with the Hospital and to execute any additional documents requested by the Hospital in order to confirm, ratify or effectuate this assignment. The Hospital shall bill all patients and collect all fees for services performed inside or outside the Hospital by Employee, or shall arrange for such billing and collection. Employee hereby appoints the Hospital for the term hereof, to be its true and lawful attorney-in-fact for the following purposes; (i) to bill patients in Employee's name and on his behalf; (ii) to collect accounts receivable resulting from such billing in Employee's name and on his behalf; (iii) to receive payments from Blue Cross and Blue Shield, Medicare, Medicaid, payments from health plans, and all other third-party payors; (iv) to receive the case proceeds of any accounts receivable; (v) to take possession of and endorse in the name of Employee any notes, checks, money orders, insurance payments and other instruments received in payment of accounts receivable; and (vi) to initiate legal

3

proceedings in the name of Employee to collect any accounts and monies owed to the Hospital, to enforce the rights of Employee as creditor under any contract or in connection with the rendering of any service, and to contest adjustments and denials by governmental agencies (or its fiscal intermediaries) as third-party payors.

6. Indemnification.

   a. Indemnity – Hospital will pay on behalf of each Employee under this Agreement all sums over $2,500 not to exceed $100,000 which he shall become legally obligated to pay with respect to a claim that: (i) arises from a healthcare liability claim for medical negligence under the Medical Practice Act; and (ii) is for compensatory damages because of personal injury or death arising out of any professional service, act or omission rendered on or after the effective date of this Agreement by an Employee in the course and scope of his employment with Hospital.

   b. Limits of Liability – The limits of liability for each Employee under this agreement shall be $100,000. For each claim the Employee will be responsible for the first $2,500 of any settlement or judgment.

   c. Medical Negligence Claims Only – Hospital will not defend nor indemnify Employee in (1) actions arising under the constitution or laws of the United States or their Texas counterparts, (2) actions asserting breach of contract, and (3) actions asserting libel, slander, defamation of character or invasion of rights of privacy or sexual misconduct.

   d. Willful or Criminal Acts – Hospital will not defend nor indemnify an Employee for any claim with respect to:

      (i) Any criminal conduct, conspiracy, criminal or civil fraud, or any sexual conduct, whether or not done in connection with any professional service, act or omission and regardless of whether such conduct is alleged to constitute negligence.

      (ii) Any intentional, willful or malicious injury, or any intentional act reasonably expected to result in injury, or any act or injury while such Employee is acting under the influence of alcohol or illicit drugs or as a result of excessive use of therapeutic drugs.

      (iii) Any claims or lawsuits based upon the violation of any state or federal statutory or regulatory law, including antitrust statutes and Consumer Protection or Deceptive Trade Practices Acts.

4

  (iv) Any punitive or exemplary damages, treble, additional or multiple damages, or any other form of fines or penalties which may be assessed against the physician over and above compensatory damages. However, the Hospital will provide a defense (without indemnity) for claims of gross negligence arising out of care as outlined in "e" below.

  (v) Any use, administration or prescription of any drug, medical device, implant or pharmaceutical which has not received final approval by the United States Food and Drug Administration (FDA) for treatment of human beings unless used in an FDA approved study; or which such physician is not licensed to use, administer or prescribe.

e. <u>Duty to Defend</u> -- Upon timely receipt of a claim or lawsuit for which there is indemnity hereunder against Employee, Hospital assumes a duty to defend. Hospital shall select and pay an attorney to defend Employee. There shall be no infringement by Employee upon (1) the professional judgment of any attorney furnishing legal services covered under this Agreement, and (2) Hospital's determination which legal expenses are reimbursable under this agreement.

f. <u>Notice to Hospital of Claim or Lawsuit</u> -- To invoke Hospital's duty to indemnify and duty to defend, Employee must immediately notify the Hospital's Administrator in person or by telephone of the service or receipt of a claim or lawsuit papers (including Texas Medical Practice Act written notice); and within three (3) days within such service or receipt deliver all such papers (petition, complaint, summons, citation, Texas Medical Practice Act written notice or other legal process) to the Hospital Administrator and obtain written acknowledgment of the receipt of such papers from the Hospital Administrator's office. Notwithstanding anything herein to the contrary, failure to timely notify Hospital shall not be grounds to deny indemnity and defense unless the Hospital has been materially prejudiced by the delay.

g. <u>Prior Acts or Omissions</u> -- Notwithstanding anything herein to the contrary, Hospital agrees to defend and indemnify Employee for any medical negligence claim under the Medical Practice Act which occurred prior to the effective date of this agreement if no such prior notice of such potential claim has been given to Employee's prior insurance carrier and the Hospital's limit of liability of prior acts or omissions shall be $200,000. The retroactive date of such prior acts coverage shall be July 1, 2001.

h. <u>Separation</u> -- Should an Employee be relieved from his contractual obligation to Hospital, whether by resignation, retirement or termination, Hospital will remain obligated to defend and indemnify such Employee for

5

        acts and omissions that are (1) covered in this Agreement and (2) were committed during the period such Employee was employed by Hospital.

    i. <u>Duty to Cooperate</u> -- Employee shall cooperate with the Hospital and assist in the conduct of lawsuits, appeals and other proceedings and in enforcing any right of contribution or indemnity against any person or organization who may be liable; and the Employee shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. With respect to the indemnification afforded under this Agreement, Employee shall not, except at his own cost, voluntarily make payment, assume any obligation or incur any expense.

    j. <u>Failure to Comply</u> -- The failure of Employee to comply with any applicable provision of Section 6 of this Agreement shall eliminate any indemnification including a duty to defend.

    k. <u>Settlement</u> -- Hospital shall have the sole right to determine whether to settle or try, before a court or jury, any claim or lawsuit brought against Employee.

7. Employee agrees to code for professional services rendered the same day as such services are rendered. Employee also agrees to assist in reasonable collection efforts.

8. <u>Prior Accounts Receivable</u>. Employee will pay Hospital 10% of those monies collected. Prior Accounts Receivable shall be collected by Employee and such monies as received will be divided ninety percent (90%) to Employee and ten percent (10%) to Hospital.

9. Hospital will purchase equipment and furnishings from Employee at fair market value as determined by an independent appraisal requiring the concurrence of both parties. If the Hospital is not willing to purchase a particular piece of equipment, or physician does not wish to sell a particular piece of equipment, neither party will be required to do so.

10. Reasonable expenses associated with moving to the new office location will be borne by the Hospital.

11. <u>Termination</u>.

    a. Involuntary Termination for Cause. This Agreement shall be deemed terminated and the employment relationship between Employee and the Hospital severed, upon the occurrence of any of the following:

        i. The death or inability of Employee to perform his normal and ordinary duties as a physician to sickness or accident for ninety (90)

6

consecutive days.

    ii. The denial, suspension, revocation, cancellation or voluntary relinquishment of Employee's right to practice medicine in the State of Texas.

    iii. The denial, suspension, revocation, cancellation, voluntary relinquishment or imposition of any restrictions on, or limitations to Employee's Hospital privileges or good standing on the Medical Staff of the Hospital.

    iv. The imposition of any restrictions or limitations by any governmental authority having jurisdiction over Employee to such an extent that Employee cannot engage in the practice of medicine or the performance of Employee's duties hereunder.

    v. Employee's failure or refusal to faithfully and diligently perform the usual customary duties of the practice of medicine and adhere to the provisions of this Agreement.

    vi. Employee's failure or refusal to comply with reasonable policies, standards and regulations of the Hospital which may from time to time be established or modified.

    vii. Employee's refusal to abide by a directive or instruction of the Hospital after having received written notice that continued refusal may result in termination of employment.

    viii. Employee conducts himself in an unprofessional, unethical, immoral or fraudulent manner, or is found guilty of unprofessional or unethical conduct by a board, institution, organization or professional society having any privilege or right to pass upon the conduct of Employee or Employee's conduct discredits the Hospital or is detrimental to the reputation, character or standing of the Hospital.

    ix. The termination or revocation of Employee's drug enforcement agency number.

12. <u>Post-Termination Expenses</u>. If Employee voluntarily terminates this Agreement without providing the Hospital with at least six (6) months advance Notice of Termination, Employee shall be obligated to pay $20,000 for each month or partial month in which Employee failed to provide six (6) months advance Notice of Termination.

13. <u>Relationship Between the Parties</u>. The relationship between the Hospital and

7

Employee shall be that of an employer and employee. Employee shall be in the paid service of Hospital (a governmental unit) and, as such, the Hospital has the legal right to control the tasks performed by Employee pursuant to this Agreement. Employee shall not be an independent contractor. Employee shall not have authority to enter into any contracts binding upon the Hospital or to create any obligations on behalf of the Hospital without authorization from the Hospital. All fees, compensation and other things of value, realized as a result of the rendition of professional medical services by Employee from any source shall belong to and be paid and delivered forthwith to the Hospital.

14. <u>Acknowledgements</u>. Employee hereby represents and acknowledges as follows:

   a. Some documents, knowledge and information regarding the methods of operation of the Hospital are highly confidential and constitute trade secrets, including but not limited to, information regarding patient lists, patient solicitation, patient treatment and charges (collectively "Confidential Information");

   b. Employee is fully capable of earning a livelihood and practicing in his professional medical field without violating any of the provisions of this Agreement; and

   c. Employee's ability to earn a livelihood and practice in his professional medical field without violating any of the provisions of this Agreement was a material condition to the execution of this Agreement.

15. <u>Trade Secrets and Confidential Information</u>. Employee agrees and covenants that Employee shall not disclose, communicate or misuse to the detriment or injury of the Hospital, any Confidential Information to any person or entity not associated with the Hospital, other than his attorneys or accountants who shall also agree not to disclose such information without the written consent of the Hospital, unless required to disclose it by law. Immediately after the earlier of the termination of this Agreement or such time as Employee shall cease to be associated with the Hospital, Employee shall return any and all Confidential Information to the possession of the Hospital.

16. <u>Patient Records and Histories</u>. All case records, case histories, x-ray films and personal and regular files concerning patients of the Hospital or patients consulted, interviewed or treated and cared for by Employee and any accounts receivable with respect thereto, shall belong to and remain the property of the Hospital.

17. <u>Amendments</u>. This agreement is subject to renegotiation at each anniversary date assuring that both parties are satisfied with the Agreement and that adequate opportunities are available to make adjustments to assure that satisfaction.

CMC00000339

18. <u>Notices</u>. Any notice given under this Agreement shall be sufficient if in writing and hand-delivered or mailed by either party registered or certified mail, return receipt requested, postage prepaid to the Hospital at its place of business or to Employee at his last known residence address.

19. <u>Construction</u>. The laws of the State of Texas shall govern this Agreement. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party. The breach of any covenants by Employee or the termination of employment by Employee shall not in any way change the obligations of Employee, including the terms and provisions of this Agreement as they pertain to the Hospital or other employees of the Hospital. This Agreement shall inure to the benefit of and be binding upon the parties, their successors, heirs and personal representatives. This Agreement shall not be assignable.

IN WITNESS WEHREOF, the parties have executed this Agreement on the day and year first above written.

HOSPITAL:  
CITIZENS MEDICAL CENTER

EMPLOYEE:

By: _____  
David P. Brown  
Hospital Administrator

_____  
William Campbell, M.D.

9