# EXHIBIT "EE"

## CIVIL ACTION NO. V-10-64
## UNITED STATES OF AMERICA V. CITIZENS
## MEDICAL CENTER, ET AL.

# RELATORS' THIRD AMENDED
# QUI TAM COMPLAINT

80
57

## MANAGEMENT AGREEMENT

THIS AGREEMENT, entered into as of the _2/_ day of November, 1996, effective as of the 1st day of January, 1997, by and between the Board of Directors (the "Board") of Citizens Medical Center, a county hospital established pursuant to TEX. REV. CIV. STAT. ANN. ART. 4478 (Vernon) with offices at 2701 Hospital Drive, Victoria, Texas 77901, and Biocare, Inc., a Texas corporation with offices at 116 Creekside, Victoria, Texas 77904.

WHEREAS, the Board of Directors of Citizens Medical Center has been duly appointed by the Commissioners Court of Victoria County, Texas pursuant to the Texas Revised Civil Statutes Annotated, Article 4479 (Vernon), as amended, when incorporated into the Texas Health and Safety Code, Section 263.021, et seq. (Vernon), to have general management and control of Citizens Medical Center ("Hospital"), a 315 bed general acute care facility in Victoria, Texas; and,

WHEREAS, the Board desires to engage Biocare, Inc. to provide an administrator ("Superintendent" as described in Article 4478, et seq.) to manage Citizens Medical Center on such basis as is appropriate to maximize the quality of care and the utilization of the hospital to the fullest extent allowed by all applicable law;

NOW, THEREFORE, in view of the foregoing recitals and in consideration of the mutual covenants herein, the Board hereby engages Biocare, through its administrator, to supervise and manage the day-to-day operation of the Hospital as more specifically set forth below.

I.  DEFINITIONS
For purposes of this Agreement, the following terms have the meanings ascribed thereto unless otherwise specified or clearly required by the context in which such term is used.

   A.  Board - "Board" means the Board of Directors of Citizens Medical Center as duly established and appointed by the Commissioners Court of Victoria County, Texas, pursuant to TEX. REV. CIV. STAT. ANN. ART 4479 (Vernon).

   B.  Biocare - "Biocare" means that Texas corporation with offices at 116 Creekside, Victoria, Texas 77904, incorporated as Biocare, Inc.

   C.  Hospital - "Hospital" means Citizens Medical Center which is located in Victoria, Texas, and established by the Commissioners Court of Victoria County, Texas.

   D.  Agreement - "Agreement" means this written agreement as modified by any duly adopted amendments.

   E.  Administrator - "Administrator" means David P. Brown, an employee of Biocare, who is a qualified hospital

CMC00006653

administrator and who shall serve as chief executive officer and Superintendent of the Hospital during the Term of the Agreement.

F.  **Medical Staff** - "Medical Staff" means the medical staff of the Hospital appointed by the Board pursuant to TEX. REV. CIV. STAT. ANN. ART. 4480 (Vernon 1976) as amended.

G.  **Commencement Date** - "Commencement Date" means the effective date of this Agreement which is January 1, 1997.

H.  **Term of Agreement** - "Term of Agreement" means the period from the Commencement Date until the Agreement is terminated pursuant to Article XIV hereof.

II.  **AUTHORITY AND RESPONSIBILITY OF THE BOARD**

A.  **Control Retained in Board** - Consistent with TEX. REV. CIV. STAT. ANN. ART. 4480 (Vernon 1976) as amended and all other applicable laws, regulations and requirements, the Board shall retain ultimate legal responsibility for the proper operation of the Hospital and shall retain the authority to discharge such responsibility. Biocare shall have only the authority and responsibility delegated to it under this Agreement or by the Board from time to time. Biocare shall render services hereunder as an independent contractor and as the delegatee of the Board's management prerogatives in accordance with policies and directives from time to time adopted by the Board and subject to the bylaws, rules and regulations of the Hospital. The relationship created by this Agreement is one of principal and agent, and nothing to the contrary shall be inferred from this Agreement.

B.  **Medical Staff** - Pursuant to TEX. REV. CIV. STAT. ANN. ART. 4480 (Vernon 1976) as amended, the Board shall appoint and maintain a Medical Staff in accordance with bylaws, rules and regulations of the Hospital. The Board shall retain ultimate responsibility for the quality of medical care rendered at the Hospital, however, Biocare shall be responsible to carry out the directives of the Board in this regard.

C.  **Specific Duties and Responsibilities Retained by the Board** Specific matters for which the Board shall retain primary responsibility include but are not limited to the following: 1) establishment, modification and discontinuance of general policies, programs, rules and regulations governing the operation of the Hospital; 2) review and approval of capital and operating budgets; 3) review and approval or disapproval of medical staff audits; 4)

2

CMC00006654

selection and employment of auditors to conduct financial audits and to issue other financial reports as contemplated herein; 5) administration of the Hospital's fund-raising program; 6) review and approval of reports and other data provided by Biocare as required by this agreement; 7) development and updating of a long-range plan for the Hospital; 8) approval and appointment of an individual to hold the office of Superintendent of the Hospital, subject to the terms of this contract.

III.   MANAGEMENT STRUCTURE AND RESPONSIBILITIES - (All Subject to the Consent and Approval of the Board)

    A.   General - Biocare shall have responsibility for supervision and management of the day-to-day operation of the Hospital in accordance with bylaws, rules, policies, programs, and budgets approved by the Board and in accordance with applicable laws, statutes and regulations.

    B.   Personnel

        1.   General - Biocare shall provide, during the Term of Agreement, an Administrator. The Administrator shall be an employee of Biocare and his or her performance shall be the responsibility of Biocare.

        2.   Administrator - The chief executive officer of the Hospital shall be an individual who shall be designated as the "Administrator" and who shall hold the office of Superintendent of the Hospital as provided by law, subject at all times to the bylaws, rules and regulations of the Hospital and to the powers of the Board. The Administrator shall have all duties, responsibilities and other authority conferred by law upon the Superintendent of the Hospital.

    C.   Day-to-Day Hospital Operation - Day-to-day hospital operation shall include, without limitation: 1) the establishment of operational policies and specific rules and regulations for the implementation of such policies; 2) personnel administration; 3) medical staff administration; 4) financial administration; 5) risk management; 6) contracts and purchases; 7) community relations as set forth more specifically below.

IV.   PERSONNEL ADMINISTRATION - (Subject to Consent and Approval of the Board)

3

CMC00006655

A.    Hospital Personnel - Except for the Administrator, the
      medical staff, and volunteers, all persons involved in the
      operation of the Hospital shall be employees of and
      compensated by the Board.   No such Hospital employee
      shall be deemed an employee of Biocare, and Biocare shall
      have no liability for payment of wages, payroll taxes or
      other expenses of employment of Hospital employees,
      except that Biocare shall have the obligation to exercise
      reasonable care in its management of the Hospital to
      properly apply available funds of the Board to the payment
      of such wages and expenses.

B.    Personnel Management - Day-to-day hospital operation
      shall include the recruiting, hiring, supervising,
      training, promoting, assigning and discharging of all
      Hospital employees.  Biocare shall determine the numbers
      and qualifications of employees needed in the various
      Hospital departments and services and shall supervise the
      establishment, revision and administration of wage scales,
      rates of compensation, employee benefits, rates and
      conditions of employment, inservice training programs,
      rules of conduct, policies concerning attendance at
      seminars or conferences, staffing schedules and job and
      position descriptions with respect to all Hospital
      employees.

V.   MEDICAL STAFF ADMINISTRATION

A.    General - Although medical matters shall be the direct
      responsibility of the Board and the Medical Staff, Biocare
      shall review the organization and operation of the Medical
      Staff and shall recommend to the Board and the Medical
      Staff, as appropriate, changes to improve the quality of
      medical services, including changes in the Medical Staff
      bylaws.

B.    Quality Assurance Program - Day-to-day Hospital
      operation shall include the development, implementation
      and maintenance, on a continuing basis, of a quality
      assurance program to provide ongoing objective
      measurements of the quality of health care provided
      throughout the Hospital.

C.    Physician Recruitment - Day-to-day Hospital operation
      shall include, as appropriate and with specific Board
      approval, a physician recruitment program to attract
      qualified and needed physicians to the Medical Staff.
      Biocare may, on behalf of the Board, offer to prospective
      members of the Medical Staff such inducements and
      financial incentives as are lawful and approved by the
      Board.

4

CMC00006656

VI.   FINANCIAL ADMINISTRATION (Subject to consent and approval of the Board)

Day-to-day Hospital operation shall include no less than the financial services set forth below.

A.   Budget - At least one month prior to the commencement of each fiscal year the preparation and presentation to the Board for its acceptance, rejection or modification a proposed budget for the ensuing fiscal year setting forth anticipated income, operating expenses, fund appropriations for the ensuing year, and anticipated capital expenditures for the ensuing three (3) years.

Such proposed budget shall include an explanation of anticipated changes in Hospital utilization, charges to patients, payroll rates and positions, non-wage cost increases, and all other items expected to differ significantly from the current year.   The budget's projection of cash receipts and disbursements shall also include debt service requirements based upon the proposed operating and capital budgets, together with recommendations as to the use of projected cash flow in excess of short term operating requirements and additional cash that may be required to meet operating and capital requirements.   Upon the Board's adoption of such budget or any modification thereof, such budget shall serve as a guide for the operation of the Hospital during the ensuing year.

B.   Accounting and Financial Records - The development and management of a suitable Hospital accounting system and systems for the development, preparation and safekeeping of records and books of accounts relating to the business and financial affairs of the Hospital. Such systems shall be in accordance with generally accepted accounting principles.     Pursuant to such systems, the following financial statements shall be prepared and delivered to the Board:

1.   Statement of Income and Expenses - On or before thirty (30) days after the close of each month, a balance sheet and a related statement of income and expenses showing the results of Hospital operations for such month and for the fiscal year to date.

2.   Annual Financial Report - On or before 120 days after the close of each fiscal year, a balance sheet and related statement of income showing the results of Hospital operations during said fiscal year, both documents to be

5

CMC00006657

certified by an independent accounting firm to be selected by the Board after consideration of the advice of Biocare.

3.    Additional Reports - Such additional reports or other documents as may be from time to time required by law or determined by Biocare or the Board to be appropriate.

C.    Payment of Accounts and Indebtedness - Subject to the provisions of any existing Bond Indenture, the payment of payroll, trade accounts, amounts due on short and long term indebtedness, taxes and all other obligations of the Hospital; provided, however, that Biocare's responsibility hereunder shall be limited to the exercise of reasonable diligence and care to apply the funds collected in the operation of the Hospital to its obligations in a timely and prudent manner, and Biocare shall have no separate liability with respect to any obligation of the Hospital.

D.    Billing and Collection of Accounts Receivable - The billing and collection of all accounts due the Hospital and any and all legal actions or proceedings necessary to collect such accounts, charges, rent or other income due the Hospital; the enforcement of the rights of the Hospital as creditor under any contract or in connection with the rendering of any service; the ouster or dispossession of tenants or other persons unlawfully in possession under any lease, license or concession agreement; the collection of damages for the breach thereof or default thereunder by any such tenant, licensee or concessionaire; and the development and implementation of policies necessary to minimize the amount of outstanding accounts receivable and the amount of bad debt.

E.    Depositories for Funds - Subject to the provisions of any existing Bond Indenture, the maintenance of accounts in banks, savings and loan associations, or other financial institutions with balances therein and disbursements therefrom in accordance with applicable law and subject to the bylaws, rules and regulations of the Hospital and to policies promulgated from time to time by the Board and/or the Commissioners Court of Victoria County.

F.    Hospital Statements and Invoices - The preparation and utilization of patient statements of account and/or patient invoices.

G.    Hospital Charges - The establishment, maintenance, revision and administration of the overall charge structure of the Hospital, including the establishment of Hospital charge rate structures which take into account the

6

financial obligations of the Board and the level of rates at comparable health care facilities in the region. Revenue from Hospital services shall be sufficient, together with other Board revenue, to pay all Hospital expenses, and shall be established only with the approval of the Board.

H.    Third Party Reimbursement Contracts - The establishment of good working relationships with third party reimbursement agencies such as the Health Care Financing Administration (Medicare), the state Medicaid agency, Blue Cross and commercial insurers and carriers, and for negotiations or favorable contractual relationships with such third party payers.

VII.   RISK MANAGEMENT

A.    Risk Management Program - Day-to-day Hospital operation shall include review of the Hospital's risk management program and development and implementation of such risk management policies and procedures as are appropriate. Risk management policy shall be based on the particular needs and circumstances of the Hospital and shall emphasize prevention of loss or injury as well as adequate compensation for loss or injury.

B.    Insurance - The Board shall maintain in full force and effect the Term of Agreement such policies of insurance or such trust funds as the Board deems appropriate to protect the Board, its management and medical staff committees against risk of loss or injury arising out of Hospital operations and business decisions.

C.    Responsibility for Misconduct and Indemnification - Biocare shall incur no liability for damages caused by the dishonesty, willful misconduct or negligence of any officer, employee or agent of the Hospital or the Board or any member of the Board of the Medical Staff. The Hospital agrees to indemnify the Administrator for all acts done by him in good faith as Chief Executive Officer throughout the term of this contract, and to include him in the Hospital's Directors and Offices Liability Policy.

VIII.  CONTRACTS AND PURCHASES (Subject to the Agreement and Consent of the Board)

A.    Service Contracts - General - Day-to-day Hospital operation shall include, as appropriate, negotiating, entering into, administering and terminating, consistent with applicable law, contracts with non-Hospital employees to render services on behalf of and at the expense for the Hospital. No such service contracts shall be concluded, however, without the prior written approval of the Board.

7

CMC00006659

Such service contracts may include the following:

1. <u>Professional Services</u> – Contracts for professional services including, without limitation, contracts relating to radiology, pathology, anesthesiology, inhalation therapy, emergency medicine, physical therapy and pharmacy services.

2. <u>Consultants</u> – Contracts for consultants to render services on matters other than day-to-day Hospital operation. Such consultants include, without limitation, attorneys, accountants, engineers, architects, contractors, construction project managers, planners and equipment consultants.

B. Purchases of Goods

1. <u>General</u> – Day-to-day Hospital operation shall include the purchase of such equipment, drugs, supplies and other goods necessary for the efficient operation of the Hospital and the enhancement of the quality of medical care rendered therein. Leases of equipment, supplies or other property shall be considered purchases for purposes of the applicability of this Article VIII.B.1. of the Agreement.

2. <u>Purchasing Policy</u> – Purchases shall be made only at reasonable cost pursuant to a "prudent buyer" principle.

IX. COMMUNITY RELATIONS

Day-to-day Hospital operation shall include the study, development and implementation of policies and procedures for improving and maintaining good relations between the Hospital and the Victoria community.

X. COMPLIANCE WITH APPLICABLE LAWS, RULES AND STANDARDS

Day-to-day Hospital operation shall include: 1) the establishment and maintenance of appropriate relationships with local, county, state and federal governments, regulatory agencies, accrediting agencies, licensing authorities, and third party payers to ensure that the Hospital is properly licensed and otherwise approved for the conduct of operations; 2) the taking of all reasonable steps to ensure that the Hospital complies with the requirements of authorized planning, regulation and inspecting agencies; and 3) the prompt review of and response to the reports and recommendations of such agencies.

8

CMC00006660

XI.   COMPENSATION OF BIOCARE

Reimbursement of Expenses – The Board will reimburse Biocare in each Contract Year for the salary and fringe benefit costs to Biocare for the Administrator.   The amount of the salary and fringe benefit cost reimbursement shall be renegotiated annually by the Board and Biocare.

In consideration of the furnishing of the services herein described, as well as reimbursement of expenses incurred in providing the same, Hospital agrees to pay Biocare the sum of $_,         ̄  _ per annum, payable in twelve (12) equal monthly installments, or such higher figure as shall be agreed upon at an annual review of the performance under this contract may merit.

The Administrator, provided by Biocare, will be named as an additional insured for health, dental, travel and accident insurance, and shall individually participate in those benefits normally provided management employees of the Hospital.

Biocare may, during the term hereof, request that a portion of the salary paid to the Administrator be deferred, provided that such request is in compliance with Hospital's then existing salary deferment and benefit plans available to the other employees of the Hospital.

The Administrator during each calendar year during the term hereof shall be allowed four weeks of vacation time with pay and the same may be taken during the calendar year in such increments as best suits the convenience of the Administrator.  Two weeks of said vacation time, if not used during a given calendar year, may be carried forward into the following calendar year and taken during that time.

Recognized hospital holidays may be taken by the Administrator and shall not be considered vacation time under the foregoing paragraph. Sick leave for the Administrator shall be in accordance with the now existing hospital policy for management personnel employed directly by the Hospital. However, in the event that Administrator herein shall be absent in excess of ninety consecutive days as a result of sick leave, hospital may at its option terminate this contract without further compensation paid by hospital to either Biocare or Administrator.  In the event of the death of Administrator during the term of this contract, Hospital, at its option, may terminate this contract ninety (90) days from the date of death and no further obligation shall exist between either of the parties hereto.

The Administrator will be permitted to be absent from the Hospital during working days to attend professional meetings and to attend to outside professional duties in the hospital field.  Attendance at such approved meetings and accomplishment of approved professional duties shall be fully compensated service time and shall not be considered vacation time, provided that the Chairman of the Board of Directors or Vice Chairman thereof approve such attendance.  The Hospital shall

9

CMC00006661

reimburse the Administrator for all reasonable expenses incurred by him incident to attendance at professional meetings, and such reasonable entertainment expenses incurred by the Administrator in furtherance of the Hospital's interests, provided, however, that such reimbursement is appropriate and within the limits of the Hospital budget.

The Administrator shall further be encouraged to participate or maintain membership in private, social or civic endeavors beneficial to the Hospital (i.e. such as United Way, Y.M.C.A., Victoria Crime Prevention Commission, Regional EMS Advisory Committee and Chamber of Commerce). However, no county, hospital or other public funds shall be used to reimburse Administrator's duties, membership fees or other fees related thereto, and the same shall be borne by Administrator or Administrator's employer, Biocare. Administrator's expenses and costs, if any, related to such activities will be reimbursed by Hospital, to the extent allowed by law.

The Hospital agrees to reimburse Biocare's Administrator for the dues and related expenses of participation in professional associations, societies and to such health care related organizations of which the Administrator is a member. Any request for reimbursement is to be approved by the Chairman or Vice Chairman of the Board of Directors.

Hospital further agrees to provide for a complete inhouse physical examination by a staff physician or physician together with all related laboratory expenses annually at no expense to Biocare Administrator.

XII.  CONFIDENTIALITY OF AND ACCESS TO INFORMATION, BOOKS AND RECORDS

A.  Policy - All information concerning the Hospital and its patients obtained by Biocare shall be considered confidential information of the Board and protected from disclosure to the extent allowed by the laws of the State of Texas. Similarly confidentiality for Biocare and its Administrator will be extended by the Board.

B.  Access - Biocare shall have complete access to the Hospital, including all offices and facilities and including Hospital records wherever located, in order to discharge Biocare's responsibilities hereunder. All records and materials furnished to Biocare by the Board in performance of this Agreement shall be returned to the Board at the conclusion of the Term of Agreement. All forms, records, statements, reports, files and other data and information (except computer programs) prepared, maintained or collected by Biocare in the performance of this Agreement shall be furnished to the Board upon its request at the conclusion of the Term of Agreement.

10

CMC00006662

XIII.  GOOD FAITH

Biocare shall exercise diligence in discharging its obligations hereunder in accordance with applicable laws and regulations and with generally accepted management techniques.  In acting hereunder, Biocare shall perform its services as a fiduciary for the Board and solely in the interest of the Board.  The foregoing notwithstanding, it is mutually understood and agreed that Biocare shall be entitled to the compensation provided herein.

Biocare shall be entitled to rely upon the statement of the Chairman of the Board or such other person designated by the Board to act on its behalf with respect to any action or approval taken or given by the Board pursuant to this Agreement.

XIV.  TERM AND TERMINATION OF THE AGREEMENT

A.   Term of Agreement - The initial term of this Agreement shall be three (3) years effective on the commencement date set forth above, unless sooner terminated as herein provided.

Negotiations for the extension of this contract, or for agreement on the terms of a new contract, shall be completed, or the decision not to negotiate a new contract shall be made, not later than twenty-four (24) months prior to this contract's expiration.     Subsequent extensions of this contract, if any, must be concluded not later than the 31st day of December of each succeeding calendar year commencing December 31, 1997 and such extensions shall be for an additional three (3) years commencing on said date.  Thereafter for so long as the Board of Directors desire to extend the services of Biocare and for so long as Biocare agrees to provide those services, on or before the 31st day of December of each subsequent year this contract shall be extended an additional three (3) years so that the contract and agreement shall never be in force for a period of time less than two (2) years and one (1) day until and unless terminated by the terms hereof.

B.   Annual Review - The Hospital Board will, on an annual basis, evaluate Biocare's performance.  This review shall occur not later than the end of each calendar year at which time the Hospital Board shall consider the annual compensation enumerated herein.     This review shall consider   continuing   management   objectives   and responsibilities as mutually agreed upon by the Hospital and Biocare through the Administrator.

Should it be determined that the Administrator was successful in its overall performance, and if the Board in

11

CMC00006663

its sole discretion determines that the fiscal condition of the Hospital is sufficient, the Hospital Board shall endeavor to maintain its compensation and benefits at a level commensurate with its peers in the health care industry and the rate of general inflation in the economy. In addition to considering the cost of living with the limitations provided herein, Biocare shall be considered for merit increases resulting from its Administrator's performance of continuing management objectives and key specific objectives as provided in this contract.

C.   Termination - The Board may, in its discretion, terminate this contract. Such action shall require a majority vote of the entire Board and become effective when such vote is taken.   After such termination, all rights, duties and obligations of both parties shall cease except that the Hospital shall continue to pay Biocare the then existing monthly compensation for the month in which the contract is terminated and for twenty-four (24) consecutive months thereafter, or for so many months as may remain of this contract, or any extension hereof, whichever is the lesser. During this period, Biocare shall not be required to perform, or cause to be performed, any duties hereunder.

For the period during which such payments are being made, the Hospital agrees to keep the Administrator's (furnished by Biocare) life insurance, disability income protection and hospital and physician's medical insurance coverage paid up and in effect, unless the Administrator named herein is re-employed and the foregoing benefits as specified are replaced as a result of such employment in which event the payments and benefits specifically in this paragraph only shall cease.

Any payments which may be required to be made in the paragraphs hereinabove may at the option of the Hospital Board be paid over a period of twelve (12) months or less or in a lump sum.

Should Biocare in its discretion elect to terminate this contract for any other reason than as stated in Paragraph C, it shall give the Board ninety (90) days' written notice of the decision to terminate. At the end of these ninety (90) days, all rights, duties and obligations of both parties to the contract shall cease.

D.   Termination for Cause - The Board may, in its discretion, terminate this contract for cause without any payment to Biocare or its Administrator.   "For cause", as used herein, shall mean any one or more of the following:

12

CMC00006664

1.   Addiction by Administrator to the use of controlled substances or affliction by alcohol abuse;

2.   The finding of the Administrator to be guilty of any dishonesty or illegal acts in connection with the performance of his duties herein;

3.   Conviction of Administrator of a felony, or Administrator's violation of any laws involving moral turpitude; or,

4.   Failure of the Administrator to comply with any written directive of the Board of Directors which has been unanimously passed by the Board and the performance of which is not illegal nor in violation of any provision of the bylaws of either the Hospital or the medical staff of the Hospital.

## XV.   ACCESS TO BOOKS AND RECORDS

To ensure that any payments made hereunder are included to the extent appropriate in determining reasonable costs incurred by a Medicare provider, Biocare and Hospital shall, if this Agreement is ultimately determined to be one to which 42 USC Section S1861(v)(1)(I) applied, perform the obligations as may from time to time be specified for subcontractors in 42 USC Section S1861(v)(1)(I) and regulations promulgated and implementation thereof.

## XVI.   MISCELLANEOUS

This contract constitutes the entire agreement between the parties and contains all the agreements between them with respect to the subject matter hereof. It also supersedes any and all other agreements or contracts, either oral or written, between the parties with respect to the subject matter hereof. Except as otherwise specifically provided, the terms and conditions of this contract may be amended at any time by mutual agreement of the parties, provided that before any amendment shall be valid or effective it shall have been reduced to writing and signed by the Chairman of the Board and the Administrator.

The invalidity or unenforceability of any particular provision of this contract shall be construed in all respects as if such invalid or unenforceable provision had been omitted.

This agreement shall be binding upon and inure to the benefit of the Hospital, its successor and assigns, and shall be binding upon the Administrator, his administrators, executors, legatees, heirs and assigns.

13

CMC00006665

This agreement shall be construed and enforced under and in accordance with the laws of the State of Texas.

THIS CONTRACT signed this the _26_ day of November, 1996, effective January 1, 1997.

CITIZENS MEDICAL CENTER

By _____
Chairman, Board of Directors

BIOCARE, INC.

By _____
President

14

CMC00006666