UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex. Rel.* DAKSHESH PARIKH, *et al*, | § § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 6:10-CV-64 |
| CITIZENS MEDICAL CENTER, *et al*, | § § § | |
| Defendants. | § | |

## **MEMORANDUM AND ORDER**

This is a *qui tam* suit brought against Citizens Medical Center (CMC), a county-owned hospital in Victoria, Texas, alleging multiple violations of the False Claims Act (the FCA). The Court already ruled on multiple challenges the defendants raised to the sufficiency of the Relators' allegations, dismissing some claims but allowing most to proceed past the pleading stage. *United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 685–86 (S.D. Tex. 2013). Relators now want to test the sufficiency of a number of defenses that CMC has asserted. Some of these defenses are common in all types of litigation, such as a limitations defense and claims of ratification and waiver. Others are unique to the FCA or litigation against the government, such as application of the Wartime Suspension of Limitations Act and defenses contending that an earlier filed suit raising the same claims bar suit. In deciding this motion to strike affirmative

defenses, however, the Court must first decide whether the *Iqbal/Twombly* heightened pleading standard applies to affirmative defenses.

I.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(f) allows the court to strike an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although such a motion to strike is generally disfavored, the decision to grant a motion to strike is within the discretion of the court. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1058 (5th Cir. 1982); *S.E.C. v. Cuban*, 798 F. Supp. 2d 783, 787 (N.D. Tex. 2011).

The traditional standard for affirmative defenses is that they must contain "enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). No federal court of appeals has decided whether the heightened pleading standard announced in *Bell Atlantic Crop. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), extends to affirmative defenses.[1] District courts in this Circuit have differing views on the question. *Compare United States v. Brink*, 2011 WL 835828, at *3 (S.D. Tex. Mar. 4, 2011);

---

[1] This is not surprising. Unlike Rule 12(b)(6) dismissals which are often appealed because they terminate a case when granted, a successful Rule 12(f) motions is typically only appealable after a defendant loses at trial.

*Vargas v. HWC Gen. Maint., LLC*, 2012 WL 948892, at *2 (S.D. Tex. Mar. 20, 2012); *Herrera v. Utilimap Corp.*, 2012 WL 3527065, at *2 (S.D. Tex. Aug. 14, 2012) (all applying the plausible pleading standard of *Twombly* and *Iqbal* to the pleading of an affirmative defense), *with E.E.O.C. v. Courtesy Building Servs., Inc.*, 2011 WL 208408, at *2 (N.D. Tex. Jan. 21, 2011) *Joe Hand Promotions, Inc. v. HRA Zone, L.L.C.*, 2013 WL 5707810, at *2 (W.D. Tex. Oct. 18, 2013); *Jones v. JGC Dallas, LLC*, 2012 WL 4119570, at *4 (N.D. Tex. Aug 17, 2012) (all applying only the fair notice standard to the pleading of an affirmative defense).

This Court is persuaded that the traditional fair notice standard, without the *Twombly* and *Iqbal* gloss,* applies to an affirmative defense. In *Floridia v. DLT 3 Girls, Inc.*, Judge Ellison identified three compelling reasons for this position. 2012 WL 1565533 (S.D. Tex. May 2, 2012). First, *Iqbal* and *Twombly* interpreted the text of Rule 8(a)(2), which requires a statement "showing the pleader is entitled to relief," which differs from Rule 8(c)'s requirement that the defendant "affirmatively state any avoidance or affirmative defense."[2] *See id.* at *2 (citing *Aros v. United Rentals, Inc.*, 2011 WL 5238829 (D. Conn. Oct. 31, 2011)); *see also Twombly*, 550 U.S. at 556 n.3; *Iqbal*, 556 U.S. at 678–79 (both focusing on

---

[2]This Court notes a related reason why the fair notice standard is appropriate. Rule 12(f), which allows courts to strike an "insufficient defense," differs on its face from Rule 12(b)(6), which refers to "failure to state a claim." The "insufficient defense" language in Rule 12(f) has traditionally been read to allow challenges to the legal sufficiency of an asserted defense, *see* __, as opposed to challenges that the defense does not "contain sufficient factual matter." *Iqbal*, 556 U.S. at 678.

3

the text of Rule 8(a)(2)).  Second, a defendant only has 21 days to serve an answer. *Id.* (citing *Lane v. Page*, 272 F.R.D. 581, 590–91 (D.N.M. 2011)).  Third, "while a motion to dismiss can resolve a case, thereby avoiding discovery entirely, motions to strike only prolong pre-discovery motion practice; as such, raising the standard for pleading affirmative defenses would only encourage more motions to strike." *Id*.  This case demonstrates that concern as the parties and Court have been tasked with the time-consuming task of analyzing a number of affirmative defenses, many of which CMC concedes may never be pursued depending on what discovery reveals.

This Court notes an additional reason, related to the Rule 8 textual argument discussed above, why the fair notice standard is appropriate.  Rule 12(f), which allows courts to strike an "insufficient defense," differs on its face from Rule 12(b)(6), which refers to "failure to state a claim."  The "insufficient defense" language in Rule 12(f) has traditionally been read to allow challenges to the legal sufficiency of an asserted defense, *see* Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1381 (3d ed.) (explaining that Rule 12(f) motions are "are a useful and appropriate tool when the parties disagree only on the legal implications to be drawn from uncontroverted facts.") (citing cases)); *id.* ("In sum, a motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits."), as

4

opposed to whether the defense "contain[s] sufficient factual matter." *Iqbal*, 556 U.S. at 678.

For these reasons, the Court will apply the fair notice standard that the Fifth Circuit followed for affirmative defenses prior to *Iqbal* and *Twombly*. *See Woodfield*, 193 F.3d at 362.

## II.   ANALYSIS

Application of the more lenient "fair notice" standard means many of the attempts to strike affirmative defenses will fail. But those that raise classic challenges to the legal sufficiency of a defense, as opposed to a defense's factual specificity or plausibility, merit more attention.

### A.  Statute of Limitations Defense

This lawsuit was filed on August 16, 2010. CMC's Answer states that the six-year FCA limitations period, *see* 31 U.S.C. § 3731(b), bars any claims "to the extent that they attempt to impose liability for conduct that occurred prior to August 16, 2004." Docket Entry No. 102 at 28. It is difficult to understand what additional notice could be provided for this standard defense. Indeed, a court has rejected a motion to strike a similar limitations defense in an FCA case even under heightened *Iqbal/Twombly* scrutiny. *See Stoffels ex rel. SBC Tel. Concession Plan v. SBC Comms., Inc.*, 2008 WL 4391396, at *2 (W.D. Tex. Sept. 22, 2008) (citing *Twombly* and stating that "the defense is largely self-explanatory and is sufficient

5

to give plaintiffs fair notice of the defense being asserted"). Relators contend that the affirmative defense fails to identify which false claims arose before the limitations period. But how can CMC identify any time-barred claims until it knows the specific bills on which Relators are basing their case? The limitations defense provides sufficient notice.

Relators also attempt to strike the statute of limitations defense as a matter of law because they contend that, under the Wartimes Suspension of Limitations Act, military operations in Iraq suspended the limitations period. CMC counters that the Act does not apply to civil cases or when the United States is not an actual party. The Supreme Court will decide in its upcoming term whether the Act applies to civil claims brought by private relators (as well as whether the Act requires a formal declaration of war). *See United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171 (4th Cir. 2013), *cert. granted*, 134 S. Ct. 2899 (U.S. July 1, 2014). It makes sense to await the Supreme Court's ruling before deciding these issues. Accordingly, the statute of limitations defense will not be stricken at this time.

### B. Ratification, Waiver, and Consent Defenses

CMC pleads the estoppel-based affirmative defenses of ratification, waiver, and consent. The Answer contends that the "government ratified or consented to the conduct at issue here or waived its claims against CMC because it has had

6

possession of all of the Medicare claims that CMC submitted that are at issue here and did not seek to impose sanctions or liability on CMC prior to the time that Relators initiated their lawsuit." Docket Entry No. 102 at 29. These defenses are improper because "estoppel against the government is impermissible." *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 682 (5th Cir. 2002) (applying, in an FCA case, the "longstanding presumption that estoppel against the government is impermissible"); *United States v. Cushman & Wakefield, Inc.*, 275 F. Supp. 2d 763, 774 (N.D. Tex. 2002) (striking ratification and waiver defenses in FCA case). In response, CMC cites to cases in which these defenses have been allowed against the Federal Deposit Insurance Corporation and Resolution Trust Corporation. Docket Entry No. 117 at 13–16; *see F.D.I.C. v. Gladstone*, 44 F. Supp. 2d 81, 90 (D. Mass. 1999); *see also Resolution Trust Corp. v. Vanderweele*, 833 F. Supp. 1383, 1384 (N.D. Ind. 1993). But in those situations the government is acting as a receiver or liquidator that stands in the shoes of a failed financial institution, not in its traditional role that implicates the public fisc. *See Southland Mgmt.*, 288 F.3d at 682 (noting the rationale for the rule barring estoppel defenses against the government as "ensur[ing] that public funds are spent 'according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants.'" (quoting *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 428 (1990)). Under

7

Fifth Circuit precedent in FCA cases, the ratification, waiver, and consent affirmative defenses are inapplicable and will be stricken.

### C. Damages Defenses

Relators also seek to strike CMC's statement in its Answer that "Relators' claims for damages are barred by the fact that the United States has suffered no actual injury or damages. The United States has suffered no actual injury or damages because CMC did not submit any false claims to the United States . . ." Docket Entry No. 102 at 29. Relators read this defense as contending that they must prove actual damages in addition to providing that false claims were filed. Docket Entry No. 111 at 14 (citing, *e.g.*, *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F. Supp. 2d 1017, 1034 (S.D. Tex. 1998)). But the Court reads the defense as stating the obvious: if Relators do not prove that any false claims were submitted, their case fails. The denial that any false claims were submitted is a challenge to the entire case and not surprising given the vigorous defense that has been mounted so far in the litigation. With this understanding of the challenged language, the Court will not strike it.

CMC also pleads that any award of damages or imposition of penalties above the amount of actual damages would be unconstitutional. Docket Entry No. 102 at 29. As for the Relators' specificity challenge to this pleading, it is impossible for CMC to identify what damages or penalties it believes are

unconstitutional when none have been awarded or imposed. As for legal sufficiency, there is case law holding that certain FCA penalties may implicate the Excessive Fines Clause. *See, e.g.*, *Hays v. Huffman*, 325 F.3d 982, 992 (8th Cir. 2003); *United States v. Mackby*, 261 F.3d 821, 830 (9th Cir. 2001) ("We conclude the civil sanctions provided by the False Claims Act are subject to analysis under the Excessive Fines Clause because the sanctions represent a payment to the government, at least in part, as punishment."). For these reasons, this defense—which CMC acknowledges is just an attempt to preserve a constitutional challenge if the outcome of this case later warrants such an argument—will not be stricken at this early stage in the case.

### D. Public Disclosure Bar

CMC pleads that the Court lacks subject matter jurisdiction because "allegations in the Complaint were publically disclosed prior to the filing of the Complaint and Relators are not the original source of the information upon which their claims are based." Docket Entry No. 102 at 30. Under the 2010 amendments to the FCA, "the public-disclosure bar is no longer jurisdictional." *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 916 (4th Cir. 2013). Although this case was filed a few months after those 2010 amendments went into effect, those amendments may not apply to this case because most or all of the alleged conduct occurred before the amendments were enacted. *See id*. at 916–18

(extending *Graham Cnty. Soil & Water Conversation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010), and *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1889 n.1, both of which held that the amendments do not apply to cases filed before the amendments' enactment, because the "retroactivity inquiry looks to when the underlying conduct occurred, not when the complaint was filed"). If the public disclosure bar remains a jurisdictional issue in this case, asserting this "defense" is not even necessary because subject matter jurisdiction cannot be waived. In light of the possibility that the jurisictional pre-2010 public disclosure bar applies,[3] the Court will keep the reference to the public disclosure in CMC's Answer. Even if the bar is no longer jurisdictional, the pleading provides fair notice of the defense being asserted. Relators can easily flesh out any specifics in support of public disclosure through an interrogatory, a process that is less time intensive than filing—and waiting for a ruling on—a motion to strike. The motion to strike the "public disclosure bar" assertion is denied.

### E.  Earlier Filed Action Defense

CMC also pleads the affirmative defense of an earlier-filed action raising the same claims, which would bar this suit if proven. Docket Entry No. 102 at 30. Given the focus this case has already received by counsel and the government

---

[3] The Court is not deciding the retroactivity issue as the parties have not addressed it.

(which asked for multiple extensions when deciding whether to intervene) and the passage of time since it was filed, it is unlikely such a prior lawsuit exists but has not yet been identified. In any event, the assertion in the answer provides sufficient notice. Again, simple discovery can flesh out any additional detail. Accordingly, the Court denies the Motion to Strike the earlier-filed action defense.

### F. Primary Jurisdiction Defense

CMC's Answer also states that "Relators' claims are barred by the doctrine of primary jurisdiction and should be litigated under Medicare regulations. The doctrine of primary jurisdiction states that certain issues are within the particular competence of an administrative agency and that once it is determined that such an issue is present, the administrative agency has exclusive primary jurisdiction to adjudicate the issue." Docket Entry No. 102 at 30. This primary jurisdiction defense, commonly applicable in challenges to utility rates set by state agencies and in cases involving similar areas of administrative expertise, is rarely accepted in FCA cases. *See United States ex. Rel Taylor v. Gabelli*, 345 F. Supp. 2d 340, 353–54 & n.60 (S.D.N.Y. 2004). Nonetheless, it is at least possible that the doctrine could apply. *See id.* at 353 n.60 (citing a treatise stating that a few courts have applied the primary jurisdiction doctrine in FCA cases, but "most courts have not adopted this theory" (quoting John T. Boese, 1 Civil False Claims and Qui

Tam Actions § 5.06[B][3], at 5-78 (2d ed. & Supp. 2002-2))).  The Court therefore cannot conclude at this juncture that the defense is "insufficient" or "immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f).  Accordingly, the Motion to Strike the primary jurisdiction affirmative defense is denied and the Court can analyze this issue in more detail if CMC files a motion seeking application of the doctrine.

### G.  Safe Harbor Defenses

CMC pleads various affirmative defenses based on the hospital's relationship with various physicians, stating that "CMC's relationships with [various doctors] qualify for Stark Law and AKS exceptions and/or safe harbors."  Docket Entry No. 102 at 30–31.  As discussed in the Court's ruling on the Defendants' motion to dismiss the complaint, the invocation of these defenses is a crucial part of this case.  *See Parikh*, 977 F. Supp. 2d at 668–69.  The one case cited by Relators for the insufficiency of these defenses applied the *Iqbal*/*Twombly* standard to affirmative defenses in an FLSA case and struck a very general assertion that "some or all of Plaintiff's claims . . . are barred . . . by statutory exemptions."  *Vargas v. HWC General Maintenance, LLC*, 2012 WL 948892, at *3 (S.D. Tex. March 20, 2012) (alteration omitted).  Under the fair notice standard

this Court is applying, the invocation of specific statutory exemptions in this case is sufficient.

### III. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the Relators' Motion to Strike and Dismiss CMC's Affirmative Defenses (Docket Entry No. 111). The Court strikes the ratification, waiver and consent defenses asserted in Paragraph 2 of the "Defenses and Affirmative Defenses" section of CMC's Answer. Docket Entry No. 102 at 29. The other challenged defenses remain.

**SIGNED** this 3rd day of September, 2014.

_____
Gregg Costa
United States Circuit Judge[*]

---

[*] Sitting by designation.